[Cite as *In re B.H.*, 2011-Ohio-1967.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95794

# IN RE: B.H.

# A Minor Child

**(Appeal by Mother)**

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 08940290

**BEFORE:** S. Gallagher, J., Kilbane, A.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 21, 2011

**ATTORNEY FOR APPELLANT**

Anita Barthol Staley
7327 Center Street
Mentor, OH 44060

**ATTORNEYS FOR APPELLEE
CUYAHOGA COUNTY DEPARTMENT OF
CHILDREN AND FAMILY SERVICES**

William D. Mason
Cuyahoga County Prosecutor

BY: Gina S. Lowe
Assistant Prosecuting Attorney
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, Ohio 44144

**Also listed:**

**Guardian Ad Litem for Child**

Brian Sharken
P.O. Box 770824
Lakewood, OH 44107

**Guardian Ad Litem for Mother**

Daniel B. Wolf
4186 Wilmington Road
South Euclid, OH 44121

**For Father**

M.H., pro se
2416 Park Place
Westlake, OH   44145

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant J.S. ("mother") appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Court Division, that awarded legal custody of her child (B.H.) to the child's maternal aunt and uncle.[1] For the reasons stated herein, we affirm the judgment of the trial court.

{¶ 2} B.H. was born in October 2008 and is mother's child. At the time of B.H.'s birth, mother had a long history of being homeless and unemployed, as well as a history of significant, untreated mental health issues. She previously had six other children removed from her care. B.H.'s father has criminal convictions for rape and sexual imposition.

{¶ 3} On November 7, 2008, the Cuyahoga County Department of Children and Family Services ("CCDCFS") filed a complaint for dependency and temporary custody of B.H., who was alleged to be a dependent child. On January 29, 2009, the juvenile court adjudicated B.H. a dependent child and committed B.H. to the temporary custody of CCDCFS.

{¶ 4} As part of the case plan, mother was to obtain stable housing and employment and maintain her mental health stability. In the course of proceedings, mother obtained housing, but was served with an eviction notice.

---

[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

She initially obtained employment with Crestmont North Healthcare, but purportedly was terminated due to a "no call, no show," although mother claims she resigned.

{¶ 5} CCDCFS filed two initial motions to modify temporary custody to legal custody because mother was still without stable housing and employment, and had not obtained mental health counseling. The initial motions were denied.

{¶ 6} CCDCFS filed a third motion on April 20, 2010, after the child had been in the custody of CCDCFS for over 14 months. At the time of the hearing, mother had obtained housing and was employed at the Eliza Jennings Nursing Home. She had not yet obtained mental health counseling, although she had made efforts to do so. She also provided evidence that she was not currently presenting as mentally ill. There was evidence that mother consistently visits with B.H. and B.H. is bonded with mother. Mother does have shared parenting over one of her other children, over which no concern was expressed.

{¶ 7} B.H. has been residing in the home of her maternal aunt and uncle since she was born and has been doing well in their care. CCDCFS presented some evidence concerning allegations that the mother had used laxatives on the child as a baby, gave the baby coffee and chicken wings, and maintained a relationship with the father of B.H., despite a no-contact order.

CCDCFS further claimed that despite mother's recent employment and housing, she had not demonstrated stability and had yet to receive psychological counseling services. The guardian ad litem recommended that it was in B.H.'s best interest to grow up in a safe and stable environment and that she remain in the care of her maternal aunt and uncle.

{¶ 8} Following the hearing, the juvenile court awarded legal custody of B.H. to her maternal aunt and uncle. Mother timely filed this appeal. In her sole assignment of error, mother challenges the decision of the trial court to modify temporary custody to legal custody.

{¶ 9} After a child is adjudicated abused, neglected, or dependent, the trial court may award legal custody to a non-parent upon finding, by a preponderance of the evidence, that legal custody is in the child's best interest. *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552; R.C. 2151.353(A)(3); R.C. 2151.415(B). When an award of legal custody is made, the parents of the child retain residual parental rights, privileges, and responsibilities. R.C. 2151.353(A)(3)(c).

{¶ 10} An appellate court will not reverse an award of legal custody absent a showing of an abuse of discretion. Id. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶ 11}** In this case, the juvenile court considered the history of instability in mother's housing and employment. Though mother had obtained housing, she was evicted by a previous landlord earlier in the year. There also was evidence that mother did not maintain her employment with Crestmont North Healthcare. She had since found other employment, but was not consistently working because of an injury sustained on the job. She also had not engaged in any psychological counseling services. The hearing was held approximately a year and a half after B.H. had been committed to the temporary custody of CCDCFS. Additionally, the court recognized father's criminal history, his failure to complete parenting education, and his failure to maintain consistent contact with the child.

**{¶ 12}** The court found that mother had not fully complied with all of the objectives of the case plan. The court considered the guardian ad litem's recommendation that legal custody be awarded to the maternal aunt and uncle. The court determined that legal custody would be in B.H.'s best interest, whereas a return to her mother's home would be contrary to the child's best interest and welfare. Although legal custody was awarded, the court ordered that "mother shall be provided with reasonable visitation with the child as agreed upon by the parties and as in the best interest of the child."

**{¶ 13}** Upon our review of the record, we find that the trial court's decision that an award of legal custody to B.H.'s maternal aunt and uncle is in the child's best interest is supported by the preponderance of the evidence. We also believe that the child's best interests are being served by placement in a stable and secure environment. Accordingly, the trial court did not abuse its discretion and we overrule appellant's sole assignment of error.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR